IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DARLENE MERRONE, | ) | Case No. 3:18-cv-193 |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| ALLSTATE VEHICLE AND PROPERTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

I. Introduction

Pending before the Court are Plaintiff Darlene Merrone's and Defendant Allstate Vehicle and Property Insurance Company's ("Allstate") Cross-Motions for Summary Judgment. (ECF Nos. 22, 26.) The Motions are fully briefed (ECF Nos. 23, 24, 25, 27, 28, 29, 30, 31, 33, 34) and ripe for disposition. For the reasons that follow, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Motion.

II. Jurisdiction

This Court has subject-matter jurisdiction because the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Plaintiff is a citizen of either Pennsylvania or North Carolina,[1] and Allstate is a business entity organized under the laws of Illinois that also has its principal place of business in Illinois. (ECF No. 1-2 ¶¶ 1–2; ECF No. 3

---

[1] It is unclear whether Plaintiff is a citizen of Pennsylvania or of North Carolina, but diversity exists regardless.

¶¶ 1–2.) Venue is proper in this District because Plaintiff originally filed her case in the Somerset County Court of Common Pleas, which this District embraces. 28 U.S.C. § 1441(a).

### III. Factual Background[2]

#### A. The Merrone House and Its Residents

In September of 2012, Plaintiff purchased and moved into a home (the "House") located at 334 Village Run Road, Boswell, Pennsylvania. (ECF No. 24 ¶ 1; ECF No. 34 ¶ 1.) Plaintiff lived in the House with her daughter, Johanna Graham, and Johanna's three children. (ECF No. 24 ¶ 2; ECF No. 34 ¶ 2.) On July 20, 2017, a fire completely destroyed the House. (ECF No. 24 ¶ 2; ECF No. 34 ¶ 2.) While fighting the fire, the fire department used an excavation company to assist, which destroyed and leveled the house as well as all the appliances, making it difficult to determine the cause of the fire. (ECF No. 24 ¶ 17; ECF No. 34 ¶ 17.) There were initial reports that local fire officials had declared the cause of the fire to be a "gas line explosion," but neither the fire department nor the police released a cause of the fire immediately after it occurred. (ECF No. 27 ¶ 7; ECF No. 30 ¶ 7.)

At the time of the fire, Plaintiff was a year behind on the House's mortgage and intended to sell the property; she also owed approximately $7,500 for installing new windows on the House. (ECF No. 24 ¶ 11; ECF No. 34 ¶¶ 8, 11.) Johanna was a recovering heroin addict, did not work, was receiving state assistance, and was on probation for retail theft and use of Plaintiff's

---

[2] All facts described are undisputed unless otherwise noted. The Court derives these facts from Allstate's Concise Statement of Material Facts (ECF No. 24) in support of its Motion for Summary Judgment (ECF No. 22), Plaintiff's Response to Allstate's Concise Statement of Material Facts (ECF No. 34), Plaintiff's Concise Statement of Material Facts (ECF No. 27) in support of her Motion for Partial Summary Judgment (ECF No. 26), and Allstate's Response to Plaintiff's Concise Statement of Material Facts, (ECF No. 30), and exhibits those documents embrace.

credit cards without permission. (ECF No. 24 ¶ 11; ECF No. 34 ¶ 11.) At the time of the fire, Plaintiff was in North Carolina, and Johanna reported that she was at a friend's house. (ECF No. 24 ¶ 11; ECF No. 34 ¶ 11.)

### B. The Insurance Policy

On July 20, 2017, Plaintiff had an insurance policy (the "Policy") with Allstate covering the House. (ECF No. 24 ¶ 4; ECF No. 34 ¶ 4.) The Policy, with a policy number of 977 943 646,[3] provided structural coverage of $241,743.00, personal property coverage of $96,698.00, and additional living expenses ("ALE") coverage of $48,349.00. (ECF No. 24 ¶¶ 4–5; ECF No. 34 ¶¶ 4–5.) The day after the fire, Plaintiff submitted a claim to Allstate. (ECF No. 24 ¶ 6; ECF No. 34 ¶ 6.) After speaking to Plaintiff, Allstate recorded a First Notice of Loss Snapshot, listing the cause of the fire as a gas leak; this information apparently originated with local fire officials. (ECF No. 27 ¶ 6; ECF No. 30 ¶ 6.)

The Policy covers, subject to certain exceptions not relevant here, "sudden and accidental direct physical loss to property," including losses "caused by fire or explosion" or "fire and lightning." (ECF No. 27-2 at 30, 35.)

To date, Allstate has paid Plaintiff a total of $364,137.50, consisting of $48,349.00 in ALE, $253,830.15 for the dwelling, and $61,958.35 for personal property.[4] (ECF No. 24 ¶ 35; ECF No. 34 ¶ 35.)

---

[3] The parties use two different policy numbers in the documents filed with this Court: Allstate uses 977 905 158, while Plaintiff uses 977 943 646. (ECF No. 24 ¶ 4; ECF No. 27 ¶ 2.) The Policy itself appears to be numbered 977 943 646, however, and the Court will use that number. (*See* ECF No. 25-2.)

[4] The amounts paid exceed the policy coverage for the House, is equal to the policy amount for ALE, and is short of the maximum for personal property.

3

## C. The Investigation

Following the fire, Allstate assigned three adjusters to Plaintiff's claim: Jason Gant to handle the structure, Amy Corona the personal property lost, and Yvette Sienkiewicz the ALE claim. (ECF No. 24 ¶ 7; ECF No. 34 ¶ 7.) On July 24, 2017, Corona spoke to Plaintiff, who mentioned that she had spoken with the fire marshal regarding the fire. (ECF No. 24 ¶ 10; ECF No. 34 ¶ 10.) In Allstate's file on the claim, Corona recorded that the fire marshal may have told Plaintiff that he believed Johanna had started the fire, and asked that Johanna take a polygraph test. (ECF No. 24 ¶ 10; ECF No. 34 ¶ 10.) Around the same time, Sienkiewicz contacted Plaintiff's bank to confirm that she was a year behind on her mortgage. (ECF No. 24 ¶ 9; ECF No. 34 ¶ 9.)

Also on July 24, 2017, Gant contacted Plaintiff to discuss her claim for loss of the structure, and to request an inspection for July 25, 2017. (ECF No. 24 ¶ 12; ECF No. 34 ¶ 12.) Plaintiff did not make the appointment, but Gant photographed the scene and noted that the police and fire departments were conducting cause and origin investigations. (ECF No. 24 ¶ 12; ECF No. 34 ¶ 12.) On August 4, 2017, Gant spoke to Bob Rice, the cause and origin investigator, who told Gant that he was trying to hire a company to excavate the scene of the fire. (ECF No. 24 ¶ 13; ECF No. 34 ¶ 13.) Allstate then issued a reservation of rights regarding intentional acts of Plaintiff[5] on August 14, 2017, in which Allstate asserted that their delay in payment was based upon a report of potential arson, information that the fire marshal and police were investigating Johanna for possible arson, and Plaintiff's financial motive. (ECF No. 24 ¶ 14; ECF No. 34 ¶ 14.)

---

[5] Essentially, Allstate notified Plaintiff that it was reserving its right to challenge payment of the claim if it discovered that Plaintiff or a member of her household deliberately set the fire.

4

After issuing the reservation of rights, Allstate referred the claim to a Special Investigative Unit ("SIU") to continue investigating the cause of the fire, and Holly Kelly was assigned to investigate. (ECF No. 24 ¶¶ 15–16; ECF No. 34 ¶¶ 15–16.) On August 15, 2017, Kelly noted that Rice told her that he would list the cause of the fire as undetermined. (ECF No. 24 ¶ 17; ECF No. 34 ¶ 17.) On the same day, Kelly took a recorded statement from Plaintiff on the subject of the House, its residents, and Plaintiff's issues with her mortgage; Kelly wrote in her notes that she planned to conduct additional investigation, including taking statements from Johanna, as well as other witnesses. (ECF No. 24 ¶ 18; ECF No. 34 ¶ 18.) Plaintiff stated that she had often smelled gas in the House and that she had spoken to the gas company about the issue. (ECF No. 27 ¶ 8; ECF No. 30 ¶ 8.) Kelly's manager also suggested further investigation of Plaintiff's mortgage and Plaintiff's claims that she moved property from the House, as well as further speaking with authorities investigating the fire. (ECF No. 24 ¶ 19; ECF No. 34 ¶ 19.)

After Allstate received an arson immunity letter[6] from the fire marshal, it referred Plaintiff's claim to Richard DiBella, an attorney, to obtain examinations under oath ("EUO") of Plaintiff and Johanna. (ECF No. 24 ¶¶ 20–21; ECF No. 34 ¶¶ 20–21.) Initially scheduled for October 12, 2017, the EUOs were postponed when, during a break in Plaintiff's EUO, Plaintiff learned that the police were searching her car and questioning Johanna about possible drugs found with her in the vehicle. (ECF No. 24 ¶¶ 24–25; ECF No. 34 ¶¶ 24–25.) Plaintiff and Johanna eventually had their EUOs on October 24, 2017. (ECF No. 24 ¶ 26; ECF No. 34 ¶ 26.) In addition to having Plaintiff and Johanna undergo the EUOs, Kelly also did the following during her

---

[6] The parties do not define an arson immunity letter, but the Court believes it refers to letters issued under 40 Pa. Stat. § 1610.1 *et seq.* which permits insurers to investigate arson without being subject to liability from civil actions arising from information that may be released as part of such an investigation.

5

investigation: (1) spoke to several of Plaintiff's neighbors, one of whom saw cars and people at the House the evening before the fire and heard fighting and yelling; (2) followed up with the same neighbor, who was reluctant to provide information, potentially due to Johanna's boyfriend's reputation as a troublemaker; (3) reviewed the social media profiles of Plaintiff and Johanna, as well as Johanna's criminal record; (4) obtained Plaintiff's bankruptcy petition; (5) requested records from the propane company and a real estate firm that Plaintiff sought to use to sell the House; (6) performed a credit check; and (7) spoke with Plaintiff's realtor, who stated that the House was in poor condition. (ECF No. 24 ¶ 27; ECF No. 34 ¶ 27.)

Kelly spoke with the fire marshal, Trooper Richards,[7] on November 16, 2017 about their investigation into the fire, and Trooper Richards stated that he intended to pursue a polygraph test for both Plaintiff and Johanna. (ECF No. 24 ¶ 28; ECF No. 34 ¶ 28.) On January 8, 2018, Trooper Richards informed Kelly that the police had scheduled a date for Johanna's polygraph, but that she was not responding to calls, and also that he had spoken with a detective on a drug task force who stated that a confidential informant heard Johanna admit to setting the fire. (ECF No. 24 ¶ 31; ECF No. 34 ¶ 31.) Allstate contacted the putative informant and interviewed him, but he denied any knowledge, though the investigator believed he may have had more information to share. (ECF No. 24 ¶ 32; ECF No. 34 ¶ 32.) Following the interview with the informant, Allstate determined that it would pay the claim and issued payments on the structure in February of 2018, an advance on the personal property in December of 2017, the remainder of

---

[7] It is unclear whether Trooper Richards is the same fire marshal who initially spoke to Plaintiff after the fire. Where the record is clear that the parties are referring to Trooper Richards, the Court will specifically identify Trooper Richards.

the personal property in February and July of 2018, and the remainder of the ALE claims in March of 2018. (ECF No. 24 ¶¶ 33–34; ECF No. 34 ¶¶ 33–34.)

The cause of the fire remains "undetermined." (ECF No. 27 ¶¶ 11–12; ECF No. 30 ¶¶ 11–12.)

### D. Plaintiff's Post-Fire Living Arrangements

Since the fire, Plaintiff has lived primarily in hotels; Allstate ascribes the difficulties in finding stable housing to eviction from hotels for damaging rooms and violating hotel policies, as well as Johanna's criminal record. (ECF No. 27 ¶ 5; ECF No. 30 ¶ 5.) Plaintiff has never rebuilt the House. (ECF No. 24 ¶ 2; ECF No. 34 ¶ 2.)

### IV. Procedural Background

Plaintiff filed the Complaint, which alleged two Counts, one for breach of contract, the second for insurance bad faith in violation of 40 P.S. § 1171.5 (*see* ECF No. 1-2 ¶¶ 18–35) in the Somerset County Court of Common Pleas on August 31, 2018. (ECF No. 1-2.) Allstate timely removed the Complaint to this Court on September 21, 2018. (ECF No. 1.) On September 27, 2018, Allstate filed an Answer to the Complaint. (ECF No. 3.) Allstate moved for summary judgment on June 27, 2019, and Plaintiff responded to the Motion on August 1, 2019. (ECF Nos. 22, 33.) Plaintiff also moved for summary judgment on June 28, 2019, and Allstate responded to her Motion on July 29, 2019. (ECF No. 26, 30.)

### V. Legal Standard

This Court will grant summary judgment "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom*,

7

*Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There is a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine if the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). In deciding a summary judgment motion, this Court "'must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594

(3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue").

VI. Discussion

### A. The Parties' Arguments

The Court will first summarize the parties' arguments with respect to Allstate's Motion, then proceed to separately recount the arguments in support of and against Plaintiff's Motion.

#### 1. Allstate's Motion for Summary Judgment

Allstate argues that it is entitled to summary judgment on both of Plaintiff's claims because: (1) Allstate has paid the policy limits on Plaintiff's claims for structure and ALE and that she has presented no evidence that Allstate has failed to compensate her for the loss of her personal property, having paid all of Plaintiff's documented claims (ECF No. 23 at 8–9); and (2) Allstate had a reasonable basis to investigate the fire as a potential arson and conducted that investigation in a reasonable and timely manner (*Id.* at 9–15). Essentially, Allstate argues that, because it has paid the claims requested, it cannot have breached the insurance contract, and that there was sufficient evidence to support a possibility of arson so that Allstate had the right to investigate before it paid the claim.

Plaintiff responds that, with respect to the breach of contract claim, Allstate's payment of the policy limits is irrelevant because Allstate breached the insurance contract by delaying payment. (ECF No. 33 at 3–4.) Plaintiff also argues that this Court should not grant Allstate summary judgment on her bad faith claim because Allstate lacked a reasonable basis to investigate the fire for arson. (*Id.*) Plaintiff's position boils down to the argument that Allstate

9

could breach the contract even if it did pay, and that there is no evidence to support the possibility of arson. (*Id.* at 4–6.)

### 2. Plaintiff's Motion for Partial Summary Judgment[8]

Plaintiff contends that she is entitled to summary judgment on both of her claims because: (1) there is no evidence that the fire was anything other than an accident, and therefore, Allstate's refusal to pay her claim immediately constitutes bad faith (ECF No. 28 at 3); and (2) by failing to pay Plaintiff's claim immediately, Allstate breached the insurance agreement. (*Id.*)

Allstate counters that: (1) Plaintiff has failed to present the requisite clear and convincing evidence that Allstate investigated in bad faith because the evidence shows that Allstate had a reasonable basis to investigate the fire as a potential arson (ECF No. 31 at 2–7); and (2) Plaintiff cannot be entitled to summary judgment on the breach of contract claim because Allstate has paid the policy limits on both the structure and ALE claims, and Plaintiff has not presented any evidence to show that there are outstanding payments for personal property. (*Id.* at 7–8.)

### B. Allstate Is Entitled to Summary Judgment on Plaintiff's Bad Faith and Breach of Contract Claims

As this Court's jurisdiction is based on the diversity of the parties, Pennsylvania law governs this dispute. *Shmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015).

---

[8] Plaintiff's Motion is a Partial Motion for Summary Judgment. (*See* ECF No. 26.) While Plaintiff seeks summary judgments on both her breach of contract and bad faith claims, she only seeks judgment with respect to liability, not damages. For the sake of convenience, the Court will omit the word "Partial" when referring to Plaintiff's Motion.

10

### 1. Allstate Is Entitled to Summary Judgment on Plaintiff's Bad Faith Claim Because Plaintiff Has Failed to Show that Allstate Lacked a Reasonable Basis to Investigate the Fire

Pennsylvania law defines bad faith in insurance actions as "any frivolous or unfounded refusal to pay proceeds of a policy." 42 Pa. Cons. Stat. § 8371. Bad faith extends not just to an insurer denying a claim, but also to the insurer's other actions, such as investigation or failing to communicate with the insured. *See Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 669 (W.D. Pa. 2012). In order to recover in her bad faith claim, Plaintiff must demonstrate the following elements: (1) that Allstate lacked a "reasonable basis for denying benefits under the policy;" and (2) that the insurer "knew of or recklessly disregarded" the fact that it did not have a reasonable basis to deny the claim. *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017). If Plaintiff fails to show either of these elements, her claim must fail as a matter of law.

The plaintiff in a bad faith case carries the burden of proof, and a mere preponderance of the evidence is not enough—Plaintiff must prove bad faith by clear and convincing evidence. *See Hall v. Brown*, 526 A.2d 413, 416 (Pa. Super. Ct. 1987), *aff'd*, 564 A.2d 916 (Pa. 1989). This requires a plaintiff to shows that the evidence is "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004). Accordingly, Plaintiff carries a heavy burden to defeat summary judgment. *See id.*

Under Pennsylvania law, insurers are permitted to "conduct a thorough investigation" of a questionable claim without acting in bad faith. *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 138 (3d Cir. 2005). Where an insurer sees "red flags" that cause concern of insurance fraud and prompt an investigation, the insurer has a reasonable basis for investigation, and is therefore not

11

liable for claims of bad faith. *See Aquila v. Nationwide Mut. Ins. Co.*, No. 07-cv-2696, 2008 WL 5348137, at *8 (E.D. Pa. Dec 15, 2008).

Allstate argues that when a loss occurs under suspicious circumstances that an insurance policy would ordinarily cover, the insurer is permitted to investigate the loss. (ECF No. 23 at 11.) Allstate asserts the following red flags that justify its investigation: (1) while first speaking to Allstate after the fire, Plaintiff admitted that the police were investigating the fire, and that the fire marshal suspected that Johanna had set the fire and asked Johanna to submit to a polygraph test; (2) Plaintiff was a year behind in her mortgage, was planning to move, owed several thousand dollars for new windows, and needed to invest more money in the property for the sale, giving her a financial motive to set the fire. (*Id.* at 12.)

Plaintiff contends that, because slightly more than a month after the fire, Allstate knew that it would be unable to identify the cause or origin of the fire, and that it would be unable to prove arson, its further delay in payment constitutes bad faith. (ECF No. 33 at 5.) Plaintiff argues that Allstate's continuing investigations past that time, and its failure to pay the claim, are bad faith as a matter of law. (*Id.*) Plaintiff further contends that Allstate is using Johanna's legal troubles as a pretext to cover their suspicions and unwillingness to pay the claim. (*Id.*) Plaintiff also argues that because the fire marshal investigates all fires, the fact that the fire marshal investigated this particular fire is irrelevant. (*Id.* at 5–6.)

The Court agrees with Allstate that it had a reasonable basis to investigate the fire, and will grant Allstate summary judgment on Count Two of Plaintiff's Complaint. Even assuming that the fire marshal investigates every fire, an assertion for which Plaintiff has provided no

support, Plaintiff's financial troubles are sufficient to give Allstate a reasonable basis to investigate the claim.

Red flags that may support a delay in paying a claim for purposes of investigation include: (1) the insured had payment obligations that exceeded their income, giving a financial motive for the insured to set the fire, *Aquila*, 2008 WL 5348137 at *8; (2) the fire marshal was investigating residents of the insured property for arson, *Parasco v. Pac. Indem. Co.*, 920 F. Supp. 647, 655–56 (E.D. Pa. 1996); (3) and the insurer's investigation determined that the fire could not have started as the fire department initially believed, *Hoffman v. State Farm Fire & Cas. Co.*, No. 4:14-CV-1978, 2016 WL 6780733, at *3, *13 (M.D. Pa. Nov. 16, 2016).

Here, Plaintiff was behind on her mortgage, giving her a financial motive to set fire to her home in order to collect the insurance proceeds; Allstate was aware that the fire marshal was investigating both Plaintiff and Johanna for arson; and there were initial reports of a gas line explosion, apparently from fire department officials, but the cause of the fire could never be determined with certainty.

Additionally, while delay in payment of insurance proceeds can be the basis of a bad faith claim, or a factor in a determination of bad faith, delay in payment is only relevant "to the extent 'a defendant insurer *knew* that it had no basis to deny the claimant.'" *Aquila*, 2008 WL 5348137 at *9 (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 589 (E.D. Pa. 1999) (emphasis original)); *see Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 669 (W.D. Pa. 2012). Allstate did not know it had no basis to deny Plaintiff's claim—in fact, it believed it might have a basis to deny the claim, hence the investigation—and Plaintiff has failed to provide clear and convincing evidence to rebut Allstate's belief that it had a reasonable basis to investigate the fire

13

as a potential arson, and to delay payment while investigating. The fire marshal was investigating the fire and had asked Johanna to submit to a polygraph test, and Plaintiff had a financial motive to start a fire in her house. It is a reasonable inference from these circumstances that arson may have been the cause of the fire. It is not a requirement that arson actually be the cause of the fire, just that it be reasonable that arson may have been the cause.

Plaintiff's arguments to the contrary are unavailing. The fact that Allstate lacked an opinion from a professional investigator as to the fire's origin and cause does not mean that Allstate would be unable to prove arson with other evidence, which Allstate was entitled to attempt to collect.

Plaintiff also maintains that the fact that Allstate delayed payment until February of 2018, six or seven months after the fire, is also indicative of Allstate's bad faith. This argument also fails. While delay in paying a claim is relevant to determining an insurer's bad faith, it is not dispositive, and does not, on its own, "necessarily constitute bad faith." *Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 572 (E.D. Pa. 2000). In fact, even if the insurer is solely responsible for the delay, as long as the delay is due to the insurer's need to investigate further, or even to negligence, there is no bad faith. *Aquila*, 2008 WL 5348137, at *9.

Here, the delay in payment was caused by an investigation that, as detailed above, Allstate had a reasonable basis to conduct. Allstate retained counsel who contacted Plaintiff to obtain necessary documentation and sought EUOs from Plaintiff and Johanna, and Allstate continued to follow up various leads for the next few months while the state police were still conducting an investigation into the cause of the fire. (ECF No. 24 ¶¶ 20–24, 25, 27, 28–31.) It was not until

January of 2018 that Allstate learned of a potential informant, and they sought to interview him; shortly after that interview, Allstate decided to pay the claim. (*Id.* at ¶¶ 31–34.)

Plaintiff has not produced sufficient "clear, direct, weighty, and convincing" evidence that this Court has "a clear conviction, without hesitation," that Allstate acted in bad faith. *J.C. Penney Life Ins. Co.*, 393 F.3d at 367. Accordingly, because Plaintiff has not shown by clear and convincing evidence that Allstate lacked a reasonable basis to investigate the fire, her claim fails, and Allstate is entitled to judgment as a matter of law.

### 2. Allstate Is Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim Because Plaintiff Has Produced No Evidence of a Breach

In order to succeed on her breach of contract claim, Plaintiff must prove three things: (1) the existence of a contract between her and Allstate, as well as the essential terms of the contract; (2) that Allstate breached the contract; and (3) that Plaintiff suffered damages as a result of the breach. *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010) (citing *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. Ct. 2005)). These elements apply to insurance contracts. *Oehlmann v. Metro. Life Ins. Co.*, 644 F. Supp. 2d 521, 532–33 (M.D. Pa. 2007). However, where the insurance company has paid the benefits under the policy, the insured cannot maintain an action for breach of contract. *Id.* at 533 (citing *Kubrick v. Allstate Ins. Co.*, No. 01-CV-6541, 2004 WL 45489, at *9 (E.D. Pa. Jan. 7, 2004)).

The parties do not dispute that they had a valid insurance contract, nor do they dispute that Plaintiff did not breach the contract. They do dispute, however, whether Allstate breached the contract and if Plaintiff suffered any damages as a result.

Because payment of the insurance proceeds negates any breach of contract action, Allstate has paid the policy limits on both the structure and ALE claims, and Plaintiff has not presented any evidence that Allstate has failed to compensate her for lost personal property, Plaintiff's claim must fail.

Plaintiff argues that Allstate breached the insurance contract by failing to pay her claim once it was clear that Allstate could not prove arson. (ECF No. 28 at 9.) Allstate responds that it had a reasonable basis to investigate and delay payment. For the reasons discussed in depth above, Plaintiff has not shown that Allstate did not have a reasonable basis to investigate and delay payment, so this delay cannot form the basis of a breach of contract. Even assuming that Allstate did breach the contract by delaying payment, Plaintiff has shown no damages as a result. Her claim that she has "suffered compensatory damages as a result of [Allstate's] material breach which will be fully evidenced at trial" (ECF No. 33 at 10), are insufficient, as Plaintiff points to no evidence of damages as a result of this delay.

Plaintiff has produced no evidence that Allstate breached the contract, or that she suffered any damages from a breach that might have occurred. Accordingly, Allstate is entitled to summary judgment on Plaintiff's breach of contract claim.

### C. Plaintiff Is Not Entitled to Summary Judgment on Her Claims

Because the Court grants Allstate summary judgment on both of Plaintiff's claims, it need not further consider Plaintiff's own Motion for Summary Judgment. However, the Court notes that, for the reasons laid out in support of its decision to grant Allstate summary judgment, even when viewing all facts in the light most favorable to Plaintiff, Allstate was entitled to summary

16

judgment. Accordingly, when viewing all facts in the light most favorable to Allstate, Plaintiff could not be entitled to summary judgment.

## VII. Conclusion

For the forgoing reasons, the Court grants Allstate's Motion and denies Plaintiff's Motion. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DARLENE MERRONE, | ) | Case No. 3:18-cv-193 |
|---|---|---|
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

## ORDER

NOW, this 21st day of October, 2019, upon consideration of Plaintiff's Partial Motion for Summary Judgment (ECF No. 26) and Allstate's Motion for Summary Judgment (ECF No. 22), **IT IS HEREBY ORDERED THAT** Plaintiff's Motion is **DENIED. IT IS FURTHER ORDERED THAT** Defendant's Motion is **GRANTED**, judgment is entered in favor of Defendant Allstate Vehicle and Property Insurance Company, and Plaintiff's case is **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE